THE STATE (THE DICKERSON SUCKASUNNY MINING CO., PROSECUTORS,) *vs.* SYLVESTER DICKERSON, COLLECTOR, &C., OF RANDOLPH TOWNSHIP, IN MORRIS COUNTY.

1. The law requires all property to be assessed for taxation at its actual value; the amount it will sell for at a public sale made under authority of law,

is a good *prima facie* criterion of such value, and will not be overcome by a valuation made by an assessor, with the consent of the owner, in a previous year.

2. The income of property is no criterion for an assessor in making a valuation.

3. If other lands in the township are assessed much below their value, it is r ) ground for setting aside an assessment made upon a correct valuation; but the remedy of the latter is to appeal from his assessment, and at the same time apply to the commissioners of appeal under the act of March 9, 1848, (*Nix. Dig.* 801, § 57,) to raise such assessments as may be too low.

4. Where an assessment is reduced by the commissioners of appeal, the assessment merges in the judgment of the commissioners; and in the absence of any evidence that the amount fixed by the commissioners is too great, the court will not interfere.

5. If a person against whom an assessment is made make an affidavit before the commissions of appeal to what he believes to be the true value, and the commissioners refuse to make a corresponding reduction, relief can be obtained in this court by *certiorari*.

6. If more tax is assessed than authorized by the proper authorities. the assessment will be set aside to the extent of such excess, and each person agains : whom an assessment is made will be entitled to a reduction, in proportion to the amount of his assessment.

*Certiorari* in matter of taxation.

Argued, November term, 1855, before Justices OGDEN, VREDENBURGH, and RYERSON; *Vanatta* and *Whelpley*, for plaintiffs, *C. S. Green*, for defendant.

RYERSON, J.   The prosecutors in this case complain of an assessment of taxes made, in the year 1854, upon their lands in the township of Randolph, Morris county.   They were assessed for 284 acres, valued by the assessor at $211,500, and for personal property valued at $500, in all $212,000, the sum assessed being $890 40.   From this assessment they appealed, and the commissioners of appeal, after hearing evidence, reduced it to $597.60.

They complain that the assessor adopted an erroneous principle in fixing a valuation upon their lands, and rated them greatly beyond their actual value; they also complain of the judgment of the commissioners of appeal, on the ground that it was an arbitrary judgment, given by

way of compromise, and not founded on any valuation put by them upon the property.

It appears, from the evidence, that Mahlon Dickerson, who died in the fall of 1853, owned, at his death, the lands in question; that the devisees of his real estate are the stockholders in this company, and that the lands taxed were bought by the company at public sale, in the spring of 1854, for $211,500, they having been run up to this price by the competition of another bidder; it further appears that, for three years next preceding his death, he was assessed, by the same assessor, for these and other lands, in all 412 acres, at a valuation fixed, by his (Dickerson's) consent, at $75,000, and the assessor testifies that he does not consider these lands intrinsically worth any more in 1854, than they were during those three years, and that his only reason for valuing them in that year at $211,500 was the fact of the public sale to the prosecutors at that price.

The principle value of the lands consists in the mines of iron ore found upon them; the assessor values them, excluding the mines and including the buildings, at from $150 to $200 per acre, making a total varying from $42,600 to $56,800. Another witness, whose means of forming a correct opinion seem superior to those of the assessor, values them at $30,000, exclusive of the mines.

To ascertain the additional value by reason of the mines, some evidence was given of the quantity of ore raised per year for several years last past, the cost of raising, and the price per ton after being raised; but this evidence was too indefinite, even if the annual production was the true legal criterion of value, to warrant the conclusion that the lands are not worth the sum at which they were sold to the prosecutors. Besides, it has been decided by this court, in the case of *The State* v. *Platt*, 4 *Zab.* 108, that "the income is not the criterion."

It further appears that there are six other mining pro-

perties in the same township, valued by the same assessor, in 1854, at $68,500, and the evidence satisfactorily shows that the lands in question are not worth more than these other mining properties, and perhaps not so much.

No one of the witnesses, however, has testified that, in his opinion, these lands are not worth the sum at which the assessor valued them, nor has any one fixed any precise value, nor does it appear that there was any such evidence before the commissioners of appeal.

It was insisted that the assessor, in regulating his valuation entirely by the amount for which the property sold, adopted an erroneous principle.     The law requires all taxable property to be assessed at its actual value (*Nix. Dig.* 801, § 59), and I know of no better *prima facie* criterion of the actual value of property than the amount it will sell for at public sale made under authority of law as this was. This principle has been recognised in the cases of *The State* v. *Danser*, 3 *Zab.* 552, and *The State* v. *Tunis*, *Ibid.* 546. Such a sale is not, however, conclusive of the value, even as against the purchasers, although strong presumptive evidence against him.; the presumption may be overcome, but it has not been in this case.

The much lower valuation put upon this property by the same assessor in the three previous years, and the valuation of $68,500, put by him in the same year upon the other mining properties in the same township, which are proved to be worth in the aggregate as much as this, were strongly urged as furnishing sufficient evidence that this property was overvalued; but such a conclusion by no means follows.     Although in those three years it was valued at less than $75,000, yet the valuation was fixed by the consent of the owner, and everybody understands that in such cases the owner, as a general rule, endeavors to fix it as low as possible, and where he and the assessor agree, they generally put it much below its actual value. Besides, even if they estimated it at what they believed

to be the actual value, they might have been mistaken, and such would be the natural inference from the purchase by the prosecutors standing unexplained, and nothing shown by the evidence to distinguish it from any other ordinary purchase at public sale; at all events, this previous valuation cannot overcome the presumption arising from the sale.

The other mining properties may have been, and doubtless were undervalued; there is evidence that the owner of one of them, rated by the assessor at $25,000, valued it at over $50,000; and although by rating the lands of the prosecutors at their actual value, and the other lands in the township much below such value, great injustice may have been done by imposing upon them more than their just share of the taxes, yet that furnishes no ground for setting aside the assessment. The remedy for such injustice is to appeal from the assessment against themselves, and at the same time apply to the commissioners of appeal, under the act of March 9, 1848, (*Nix. Dig.* 801, § 57,) to raise such assessments as may be too low; by the provisions of that act, and of the 49th section of the act of 1846, the commissioners could examine all the assessments made in the township, and after ascertaining the total value of the taxable property, could apportion the taxes to be raised ratably upon all, raising some and reducing others, as from the evidence before them might be agreeable to the principles of justice.

In the case of *The State* v. *Platt,* 4 *Zab.,* 108, church property of the value of $100,000, not exempt from taxation, was omitted entirely by the assessor, and the omission was urged as a ground for setting aside the assessment, but the objection was not sustained; the principle settled in that case applies to this. In taking the amount for which the property sold as the standard of its value, the assessor did not adopt an erroneous principle, neither

will the evidence warrant the conclusion that this was above its actual value.

But whether this assessment was too high or not, or made upon an erroneous principle or not, it was reduced by the commissioners of appeal, and merged in their judgment. They reduced it from $890.40 to $597.60, which, at the same percentage, would reduce the valuation from $211,500, to about $141,786 ; it does not, however, appear upon what evidence they acted in making the reduction.

The argument of the prosecutors is, that the fact of the original assessment having been reduced by the commissioners, and merged in their judgment, furnishes sufficient evidence that it was too high ; that their judgment was an arbitrary one, not founded upon any principle or any valuation of the property, but given as a compromise, and must therefore be set aside; and that a reference should be ordered to ascertain the actual value of the property, and enable the court to correct the assessment accordingly.

The act of 1846, § 49, (*Nix. Dig.* 800) requires the commissioners to "give such judgment as shall be agreeable to the principles of justice," and declares that their judgment shall be final and conclusive ; but the act of 1852, § 2, (*Nix. Dig.* 804) gives the court power to amend the asessment, if it shall satisfactorily appear "that the amount or value of taxable property for which any person is therein assessed is too great." There is no evidence to warrant the conclusion that the assessment, as reduced by the commissioners, is too great, nor even that the property was valued by the assessor beyond its actual value ; and in the absence of such evidence there is no power in the court to interfere with their judgment, even if it was such a judgment as was contended by the counsel of the prosecutors. In the absence of such evidence, and in the face of the deduction by the commissioners of one-third from the original assessment, how can it be said that the

assessment is still too high, or that the judgment of the commissioners was not agreeable to the principles of justice? To establish the doctrine contended for by the prosecutors would open a door to endless litigation.

It does not appear that the prosecutors availed themselves of the right given them by the 11th section of the act of 1854 (*Nix. Dig.* 803) to fix the valuation by affidavit. The president of the company appeared before the commissioners, and objected to the assessment; but it does not appear that he, or any one else, tendered to the commissioners the affidavit contemplated by the act. If the valuation was too high, he could have sworn before them to what he believed was the true value; and if the commissioners had refused to make a corresponding reduction, relief could have been obtained by *certiorari*. This section affords to all parties complete relief against any arbitrary or unjust proceeding on the part of the commissioners, and it is somewhat surprising that the prosecutors did not avail themselves of it. What inference can be drawn from this omission, except that they could not conscienciously take the necessary oath?

The objections which have been considered are not sufficient to warrant the interference of the court with the assessment or the judgment of the commissioners.

The remaining objection is, that more tax was assessed than was authorized, and this is sustained by the evidence. The amount authorized for all purposes was $4787.83, and the amount assessed was $5071.72, an excess of $283.89. It must, therefore, be referred to a commissioner to ascertain what is the prosecutors' proportion of this excess, and to that extent the assessment must be set aside, but affirmed as to all the rest; the calculation of their proportion must be made upon the basis of their tax, as reduced by the commissioners of appeal.

CITED *in State* v. *Kosler Coll.* 9 *Vr.* 309 ; *State* v. *City of Elizabeth,* 10 *Vr.* 250.